IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RAYMOND CLAUDIO,
     Plaintiff,

vs.                                Case No.: 5:13cv345/MMP/EMT

MICHAEL CREWS, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

     This matter is before the court on Plaintiff's Second Amended Complaint, filed pursuant to 42 U.S.C. § 1983 (doc. 14).  Plaintiff is proceeding pro se and in forma pauperis.

     The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Plaintiff, it is the opinion of the undersigned that Plaintiff's claims are subject to dismissal.

## I.     BACKGROUND

     Plaintiff's complaint concerns events that occurred from October 23, 2012 to November 19, 2012, while he was an inmate of the Jackson Correctional Institution ("Jackson C.I."), a facility of the Florida Department of Corrections ("FDOC") (doc. 14 at 4–12).[1]  Plaintiff was no longer incarcerated when he commenced this civil rights action on October 11, 2013 (*see* doc. 1).

     In his Second Amended Complaint, the operative pleading, Plaintiff names the following eight persons as Defendants:  Michael Crews, Secretary of the FDOC; Randall Bryant, (now former) Warden of Jackson C.I.; Ricky Cloud, Assistant Warden of Jackson C.I.; Eddie Jones, Captain at

---

[1] The page references used in this Report and Recommendation reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

Jackson C.I.; Sergeant Wingett at Jackson C.I.; and John Does #1, #2, and #3, three unidentified officers at Jackson C.I. who served on the Institutional Classification Team ("ICT") (doc. 14 at 1–3). Plaintiff alleges that on July 6, 2012, Assistant Warden Cloud threatened to restrict his law library privileges and send him to "lock down" if he continued to file inmate grievances (*id.* at 5–6). Plaintiff alleges that more than three (3) months later, on October 23, 2012, Sergeant Wingett sexually battered him by placing her hands on his penis and scrotum and caressing his penis (*id.* at 4). Plaintiff alleges the same day, he filed an informal grievance regarding the sexual battery, and the next day, October 24, 2012, he filed an informal grievance concerning "retaliatory actions" by Sergeant Wingett (*id.*). Plaintiff alleges Assistant Warden Cloud approved both grievances for investigation on October 25, 2012 (*id.*). He alleges on October 26, 2012, Warden Bryant reported his complaint of sexual battery to the FDOC's Inspector General's Office for investigation of a possible violation of Florida Statutes § 944.35 (*id.* at 6).[2] Also that day, Captain Jones, at the direction of Assistant Warden Cloud, required Plaintiff to undergo a "full body check up" in the medical department, and then placed him in administrative confinement ("AC") (*id.* at 5–7). Plaintiff alleges the "full body check up" was performed in the presence of Licensed Practical Nurse ("LPN") Young, a female nurse, and LPN Young prepared a "sexual battery protocol" (*id.* at 7).

Plaintiff alleges the forwarding of his complaint of sexual battery to the Inspector General's Office, requiring him to undergo the medical check up, and placing him in AC were unnecessary and

---

[2] Florida Statutes § 944.35 provides, in relevant part:

(3)(a) 1.  Any employee of the department who, with malicious intent, commits a battery upon an inmate . . ., commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

(b) 1.  As used in this paragraph, the term "sexual misconduct" means the oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object, but does not include an act done for a bona fide medical purpose or an internal search conducted in the lawful performance of the employee's duty.

2.  Any employee of the department . . . who engages in sexual misconduct with an inmate . . ., without committing the crime of sexual battery, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 944.35(3)(a)1., (b)1., 2.

in violation of FDOC policy, because he did not allege he was the victim of "sexual misconduct," as that term in defined in Florida Statutes § 944.35, and he did not sign a written statement that he was in fear of staff (doc. 14 at 5–8).  Plaintiff alleges Assistant Warden Cloud ordered the "full body check up" and placement in AC under the guise of protecting Plaintiff during the investigation of his sexual battery complaint, but the real reason for these actions was to retaliate for Plaintiff's filing the grievances against Sergeant Wingett (*id.* at 4, 6–8).  Plaintiff alleges Captain Jones conspired with Assistant Warden Cloud in the alleged retaliation (*id.* at 6).  He also alleges the members of the ICT, Defendants John Doe #1, #2, and #3, negligently extended his placement in AC five (5) days beyond the initial 15-day period permitted by FDOC policy, and then allowed an additional four (4) days to elapse before releasing him from AC (*id.* at 8).  Plaintiff alleges there was no reason to extend his initial 15-day placement, because the Inspector General's Office completed its investigation on November 2, 2012 (*id.*).  Plaintiff alleges he remained in AC a total of twenty-four (24) days, from October 26, 2012  to November 19, 2012 (*id.* at 9).

    Plaintiff alleges the conditions of confinement in AC subjected him to cruel and unusual punishment (doc. 14 at 9–11).  He alleges Captain Jones "chemically assaulted" other inmates in AC three (3) times (*id.*).  He alleges Jones closed the air vents and turned off intake fans during each occurrence, which exposed all inmates in AC to residual chemical agents in the air, and caused Plaintiff and his cellmate to gag uncontrollably on one occasions (*id.*).  Plaintiff alleges Officer Graham turned on intake fans, which drew freezing cold air from outside into the unit and caused extremely cold conditions (*id.*).  Plaintiff alleges inmates were not provided soap or towels in their cells to remove the residue from the chemical agents; and although they were provided soap and a towel at shower time, the amount of soap and size of the towel were very small (*id.*).  Plaintiff alleges one of the showers provided only cold water, and he was sometimes forced to use this shower (*id.*).  He additionally alleges inmates were provided only one roll of toilet paper every ten (10) days, which was insufficient and caused him to have to wash himself with water and his hand after defecating, without any soap in his cell to sanitize his hand afterwards (*id.*).  Plaintiff alleges his t-shirts and socks were confiscated upon his entering AC, and he was not allowed to get under the blankets, which caused him to shiver from the cold (*id.*).  He alleges there was no laundry exchange in AC, so he was forced to wear the same uniform for twenty-four (24) days (*id.*).  Plaintiff alleges the food was served

cold on unsanitary and uncovered trays (*id.*).  He also alleges that the trays, cups, and utensils were coated with grease and "slime" (*id.*).

Plaintiff contends Secretary Crews negligently allowed abusive staff to work at Jackson C.I. (doc. 14 at 11–12).  He alleges in 2012, numerous staff members were suspended for neglect of inmates, lying to investigators, and altering and destroying documents to cover up instances of inmate abuse and neglect (*id.*).  Plaintiff alleges Captain Jones was suspended for fifty-six (56)  hours for committing perjury to the Inspector General's Office, yet Secretary Crews did not terminate Jones from employment (*id.*).  Plaintiff alleges Secretary Crews neglected to continue the investigation of misconduct by staff and abusive conditions in AC at Jackson C.I. (*id.*).

Plaintiff claims Assistant Warden Cloud and Captain Jones, individually and as part of a conspiracy, retaliated against him in violation of the First Amendment, violated his rights under the Due Process Clause, and exposed him to cruel and unusual punishment in violation of the Eighth Amendment by requiring him to undergo a "full body check-up" and placing him in AC (doc. 14 at 13–14).  Plaintiff also brings a state law claim of sexual battery against Sergeant Wingett, and state law negligence claims against Captain Jones, Warden Bryant, Secretary Crews, and Defendants John Doe #1, #2, and #3 (*id.*).  He seeks declaratory relief, punitive damages, and compensatory damages for emotional injury he suffered as a result of Defendants' conduct (*id.* at 13–15).

II.   STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  <u>Mitchell v. Farcass</u>, 112 F.3d 1483, 1485 (11th Cir. 1997).  The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. <u>Davis v. Monroe County Bd. Of Educ.</u>, 120 F.3d 1390, 1393 (11th Cir. 1997).  To survive § 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).  A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted).  The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted).  And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted).  Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.  Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . .  A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

III.    ANALYSIS

A.    Federal Conspiracy Claim

Plaintiff's conspiracy claim against Defendants Cloud and Jones fails because of the intracorporate conspiracy doctrine.  "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc).  "[U]nder the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Id.*; *accord* Denney v. City of Albany, 247 F.3d 1172, 1190–91 (11th Cir. 2001) (stating

"the only two conspirators identified . . . are both City employees; no outsiders are alleged to be involved" and concluding intracorporate conspiracy doctrine barred plaintiffs' § 1985(3) conspiracy claims for deprivation of their equal protection rights).  The doctrine applies to public entities such as state agencies and its personnel.  *See* <u>Wright v. Ill. Dep't of Children & Family Servs.</u>, 40 F.3d 1492, 1508 (7th Cir. 1994) (holding that intracorporate conspiracy doctrine applies not just to private entities but also to government agencies such as Illinois Department of Children and Family Services); *see also* <u>Grider v. City of Auburn, Ala.</u>, 618 F.3d 1240, 1262–63 (11th Cir. 2010) (intracorporate conspiracy doctrine barred plaintiff's § 1983 conspiracy claims against police officers); <u>Denney</u>, 247 F.3d at 1190 (intracorporate conspiracy doctrine applied to city and its personnel); <u>Rehberg v. Paulk</u>, 611 F.3d 828, 854 (11th Cir. 2010) (concluding intracorporate conspiracy doctrine barred § 1983 conspiracy claim against a county employee); <u>Dickerson v. Alachua Cnty. Comm'n</u>, 200 F.3d 761, 767–68 (11th Cir. 2000) (concluding intracorporate conspiracy doctrine barred plaintiff's § 1985(3) conspiracy claim for interference with his civil rights); <u>Chambliss v. Foote</u>, 562 F.2d 1015 (5th Cir. 1977) (affirming district court's summary judgment opinion applying the intracorporate conspiracy doctrine to bar a § 1985(3) claim against a public university and its officials)[3]; <u>Taylor v. Alabama</u>, 95 F. Supp. 2d 1297, 1317–18 (M.D. Ala. 2000) (doctrine of intracorporate conspiracy barred plaintiff's conspiracy claim against employees of state agency); *see also, e.g.,* <u>Detris v. Coats</u>, 523 F. App'x 612, 615 (11th Cir. 2013) (unpublished) (intracorporate conspiracy doctrine prohibited § 1983 claim against deputies who allegedly beat arrestee while he was being held in pretrial detention).

In the instant case, both Defendants involved in the alleged conspiracy are employees of the FDOC.  No outsiders are involved.  The subject of their alleged conspiracy—placing and maintaining Plaintiff in administrative confinement in retaliation for his filing grievances—involved job-related functions well within Defendants' scope of employment as FDOC employees.  *See* <u>Grider</u>, 618 F.3d at 1261 (recognizing that one might reasonably believe that violating someone's constitutional rights is never a job-related function or within the scope of a public employee's employment, but holding that the question of whether a defendant acted within the scope of his employment is distinct from

[3] Decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981 are binding as precedent on the Eleventh Circuit.  <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).

whether the defendant acted unconstitutionally; the scope-of-employment inquiry is whether the employee was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the employee's scope of authority (i.e., job-related duties) and in furtherance of the employer's business).  Therefore, Plaintiff's conspiracy claim must be dismissed.

        B.     Eighth Amendment Claim

Plaintiff's allegations concerning the conditions of his confinement in AC fail to state an Eighth Amendment claim.  The Eighth Amendment forbids punishments that are cruel and unusual in light of contemporary standards of decency.  U.S. Const. amend. VIII; Ford v. Wainwright, 477 U.S. 399, 405–06, 106 S. Ct. 2595, 91 L. Ed. 2d 335 (1986).  Accordingly, the Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive in prison. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  A conditions-of-confinement claim requires a two-prong showing:  "an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'"  Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting Farmer, 511 U.S. at 834).

     The Supreme Court has set a high bar for the objective component of a claim challenging a condition of confinement.  The Court has observed that "the Constitution does not mandate comfortable prisons."  Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting Rhodes v. Chapman, 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)).  "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'"  Id. (quoting Rhodes, 452 U.S. at 347).  "[T]o make out a claim for an unconstitutional condition of confinement, 'extreme deprivations' are required."  Thomas, 614 F.3d at 1304 (quoting Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)).  A prison condition is unconstitutional only if it deprives the plaintiff of a human need, Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994) (citing Wilson v. Seiter, 501 U.S. 294, 305, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1994)), or otherwise "'pose[s] an unreasonable risk of serious damage to his future health' or safety," Chandler, 379 F.3d at 1289 (quoting Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)).

The subjective component of a conditions-of-confinement claim requires that "the official had a 'sufficiently culpable state of mind.'" Thomas, 614 F.3d at 1304 (quoting Farmer, 511 U.S. at 834). "[T]he relevant state of mind is deliberate indifference." Id. (citing Wilson, 501 U.S. at 303). Deliberate indifference has three components:  "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotations omitted).  For an official to have subjective knowledge of the risk of harm, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.  Whether an officer was aware of a risk of serious harm may be deduced from circumstantial evidence such as the obviousness of the situation confronting the officer.  Id. at 842–43.  A mere negligent failure to protect an inmate does not state a claim under § 1983. Davidson v. Cannon, 474 U.S. 344, 347–48, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).

A viable complaint must also show that the prison official responded to the risk in an objectively unreasonable manner.  Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003) (citing Farmer, 511 U.S. at 834, 844–45); Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1027 (11th Cir. 2001) ("[O]fficials, to be liable, must be aware of a substantial risk of serious harm to the inmates and not take reasonable measures to alleviate that risk.").  The officer must have a realistic opportunity to prevent the illegal conduct. See Ensley v. Soper, 142 F.3d 1402, 1407–08 (11th Cir. 1998); Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986); Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844.  Finally, a plaintiff must show that the constitutional violation caused the injury.  Cottone, 326 F.3d at 1359 (citing Marsh, 268 F.3d at 1028).

Here, Plaintiff brings an Eighth Amendment claim against Assistant Warden Cloud and Captain Jones.  As to Assistant Warden Cloud, Plaintiff does not allege any facts suggesting a basis for holding Cloud liable for the conditions in AC.  To the extent Plaintiff seeks to hold Cloud liable under a theory of respondeat superior, government officials may not be held liable for the unconstitutional conduct of their subordinates under such a theory.  See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (finding no vicarious liability for a municipal

"person" under 42 U.S.C. § 1983). "Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).   Under <u>Iqbal</u>, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." <i>Id.</i>, 556 U.S. at 677.  "[S]upervisors are liable under [section] 1983 'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" <u>Myers v. Bowman</u>, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting <u>Keating v. City of Miami</u>, 598 F.3d 753, 762 (11th Cir. 2010)).  Facts sufficient to establish a causal connection include those "which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." <u>Keating</u>, 598 F.3d at 762 (internal quotation omitted).  Here, Plaintiff does not allege any facts suggesting a causal connection between Assistant Warden Cloud and the conditions of confinement in AC.

As to Captain Jones, Plaintiff specifically alleges Jones applied chemical agents to three (3) inmates while Plaintiff was in AC, and in each instance Jones closed air vents and turned off intake fans in the unit, causing inmates in AC to suffer residual effects of the chemical agents, including extreme difficulty breathing.[4]  However, turning off the fans and closing the vents while chemical agents were being applied was not objectively unreasonable, because it tended to minimize, rather than exacerbate, circulation of chemical agents in the air.  Further, Plaintiff admits Captain Jones did this only three (3) times during Plaintiff's 24-day placement, that he had access to water in his cell to rinse any residue from exposed skin, and that intake fans were circulating outside air into the unit (albeit cold air) at other times.  Plaintiff's allegations thus fail to state an Eighth Amendment claim against Defendant Jones or Defendant Cloud.

---

[4] Although Plaintiff complains of other conditions of confinement in AC (e.g., cold showers, lack of clothing and laundry service, inadequate toiletries, and unsanitary food trays), he does not allege any facts suggesting a basis for holding Captain Jones or any other Defendant liable for those conditions.

C.    First Amendment Claim

Plaintiff's allegations of retaliation by Defendants Cloud and Jones are also insufficient to state a constitutional claim.  It is well established that the First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech.  *See* Crawford-El v Britton, 523 U.S. 574, 588 n.10, 592–93, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (citations omitted); Adams v. James, 784 F.2d 1077, 1080 (11th Cir. 1986) (citation omitted); *see also* Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986).  "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment."  Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006).  To prevail on a claim of retaliation, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal relationship between the retaliatory action and the protected speech.  *See* Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008) (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)); Cummings v. Harrison, 695 F. Supp. 2d 1263, 1274–75 (N.D. Fla. 2010).  A prisoner's filing of a grievance concerning the conditions of his imprisonment is protected speech under the First Amendment.  *See* Douglas, 535 F.3d at 1321 (quoting Boxer X, 437 F.3d at 1112).  As to the second element, the Eleventh Circuit employs a purely objective standard:  "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bennett, 423 F.3d at 1253.  In adopting this objective standard, the Eleventh Circuit expressly rejected a subjective "actual chill" standard, that is, a plaintiff suffers adverse action only if the retaliatory conduct actually chilled the exercise of his First Amendment rights.  *Id.* at 1250–54.  The third element, whether there was a causal connection between the retaliatory acts and the adverse effect on the speech, "asks whether the defendants were subjectively motivated to discipline because [the prisoner] complained of the conditions of his confinement."  Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008).

Most courts, including the Eleventh Circuit, resolve the third element, the subjective motivation issue, under the burden-shifting formula of Mt. Healthy City Sch. Dist. Bd. of Educ. v.

Doyle, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).  *See* Hartman v. Moore, 547 U.S. 250, 260, 126 S. Ct. 1695, 64 L. Ed. 2d 441 (2006) (citing Mt. Healthy, 429 U.S. at 285–87; Crawford-El, 523 U.S. at 593); Smith, 532 F.3d at 1278.  Initially, the plaintiff must plead and provide sufficient evidence of the retaliatory motive and the adverse action.  *See* Hartman, 547 U.S. at 259–60.  Because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury." Crawford-El, 523 U.S. at 598 (citation omitted); Harris v. Ostrout, 65 F.3d 912, 916–17 (11th Cir. 1995); *see also* Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (because claims of retaliation may be easily fabricated, they should be reviewed with skepticism).  "If there is a finding that retaliation was not the but-for cause of the action complained of, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind."  Hartman, 547 U.S. at 260 (citing Mt. Healthy, 429 U.S. at 287); *see also* Crawford-El, 523 U.S. at 593.  Indeed, "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway."  Hartman, *supra* (citing Crawford-El, 523 U.S. at 593; Mt. Healthy, 429 U.S. at 285–86).

Here, Plaintiff alleges Assistant Warden Cloud initiated a formal investigation of Plaintiff's complaint of sexual battery, and Cloud and Captain Jones required him to undergo a full body examination and placed him in AC in retaliation for Plaintiff's filing the grievances concerning Sergeant Wingett's conduct.  However, Plaintiff alleges nothing but his own personal belief of retaliatory motive to support his claim against Captain Jones.  As to Assistant Warden Cloud, Plaintiff's allegation that more than three months prior to his filing the grievances against Sergeant Wingett, Cloud threatened to restrict his library privileges and place him in "lock down" if he filed grievances, is insufficient to plausibly suggest a retaliatory motive on Cloud's part.

Moreover, and most importantly, Plaintiff's complaining that Sergeant Wingett sexually battered him was a sufficient nonretaliatory ground for prison officials to initiate a formal investigation of his complaint, require him to undergo a full body examination in compliance with the sexual battery protocol, and place him in AC for the stated reason of protecting him during the

investigation.[5]  The FDOC's Inmate Orientation Handbook notifies inmates that allegations of sexual

battery by staff are taken very seriously and fully investigated.  The Handbook provides:

### Prison Rape Elimination Act

> In accordance with the Prison Rape Elimination Act (PREA) of 2003 [42 U.S.C.
> §§ 15601–09], the Department has adopted a zero-tolerance policy toward sexual
> assault/battery and sexual harassment by inmates or staff.  If you feel that any of these
> have happened to you, immediately notify a staff member so that appropriate action
> can be taken. . . . .   The Department takes all allegations very seriously and
> investigates all reports of sexual harassment, sexual assault, and sexual battery.
> . . . .
> Those who commit sexual assault/battery or sexual harassment face legal action.  If
> necessary, the Department will seek outside criminal charges.

State of Florida, Department of Corrections Inmate Orientation Handbook, p. 17.  The Prison Rape

Elimination Act defines "rape" as including sexual fondling of a person against that person's will. 42

U.S.C. § 15609(9)(A).  "Sexual fondling" is defined as "the touching of the private body parts of

another person . . . for the purpose of sexual gratification."  42 U.S.C. § 15609(11).  As previously

noted, a correctional officer's sexual battery of an inmate is a criminal offense under Florida law.

The Florida Administrative Code defines administrative confinement as "the temporary

removal of an inmate from the general inmate population in order to provide for security and safety

until such time as more permanent inmate management processes can be concluded."  Fla. Admin.

Code r. 33-602.220(1)(a) (eff. Oct. 7, 2012).  FDOC policy provides for the placement of an inmate

in AC pending an investigation:

> (3) Reasons for Placement in Administrative Confinement with time limits.
> Placement of an inmate in administrative confinement is authorized for the following
> reasons:
> . . . .
> (e) An investigation . . . is pending and the presence of the inmate in the
> general population might interfere with that investigation or present a danger to the
> inmate, other inmates, or to the security and order of the institution.  An investigating
> officer shall have the authority to request that the senior correctional officer place the
> inmate in administrative confinement for this reason and the length of time spent in this

---

[5] The fact that Plaintiff remained in AC even after the Inspector General's investigation concluded cannot be
attributed to Cloud and Jones, because the ICT was responsible for reviewing Plaintiff's placement after Cloud and
Jones initially placed him there.  *See* Fla. Admin. Code r. 33-602.220(2)(b), (c), (3)(e).

> status shall not exceed 15 working days unless one 5 working day extension is granted by the ICT. . . . If it is necessary to continue the inmate's confinement beyond this first extension, written authorization must be obtained from the SCO [State Classification Officer, a staff member at the Central Office level who is responsible for the review of inmate classification decisions] for a 30 day extension. . . . The SCO shall have the authority to authorize one additional 30 day extension.

Fla. Admin. Code r. 33-602.220(3)(e).   Here, Plaintiff's reporting that a staff member sexually battered him was a sufficient nonretaliatory reason to initiate a formal investigation of his complaint, require him to undergo a full body examination in compliance with the sexual battery protocol, and place him in AC pending the investigation.  Therefore, Plaintiff cannot show that retaliatory motive was the but-for cause of any of the official action taken by Assistant Warden Cloud or Captain Jones after Plaintiff reported he was sexually battered by Sergeant Wingett.  Accordingly, Plaintiff's First Amendment claims should be dismissed.

> D.    Federal Due Process Claim

Plaintiff allegations also fail to state a due process claim against Defendants Cloud and Jones. The Due Process Clause protects against deprivations of "life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement," but "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)."  Wilkinson v. Austin, 545 U.S. 209, 221–22, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005).  Pursuant to Sandin, due process is required before an inmate may be deprived of a state-created benefit if the deprivation of that benefit "imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484.

As previously discussed, the Florida Administrative Code provides that inmates are subject to administrative confinement only in certain circumstances.  See Fla. Admin. Code r. 33-602.220. "After Sandin, . . . the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life."  Wilkinson, 545 U.S. at 223 (quotation omitted).  In Sandin, the Supreme Court compared the conditions of confinement in disciplinary segregation, administrative segregation, and the general

population, and found that a prisoner's thirty-day confinement in disciplinary segregation did not implicate a state-created liberty interest because it did not present an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484.

In <u>Wilkinson</u>, however, the Supreme Court found that inmates did have a liberty interest in avoiding assignment to a state's "supermax" prison.  In so finding, the Court carefully distinguished supermax facilities from normal segregation units in three ways:  First, inmates in the supermax facility were "deprived of almost any environmental or sensory stimuli and of almost all human contact." 545 U.S. at 214.  Second, they were assigned for "an indefinite period of time, limited only by [the] inmate's sentence." *Id.*  Third, once assigned to supermax "[i]nmates otherwise eligible for parole lose their eligibility while incarcerated" at the facility. *Id.* at 215.  The Court noted other harsh conditions that might be common to most solitary confinement facilities, such as permitting no conversation between cells, lighting the cells twenty-four hours per day, and limiting exercise to one hour per day in a small indoor room. *Id.* at 224.  Unlike other facilities, however, the conditions at the supermax facility included the two other components noted above, which are indefinite placement and disqualification for parole consideration.  The Court then stated: "While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Id.* at 224.

Here, the nature of the conditions and duration of Plaintiff's placement in AC do not show that his confinement was a major disruption to his environment as compared to placement in the general population at Jackson C.I.  Plaintiff complains he was deprived of t-shirts and socks, and Officer Graham allowed no heat in AC,[6] which caused Plaintiff to shiver due to freezing cold outside air blowing through the air vents.  However, Plaintiff admits he had his uniform and blanket at all times during his stay in AC.  Further, although Plaintiff complains that one of the showers had only cold water, he admits he was forced to use that shower only occasionally.  Plaintiff also complains his uniform was not laundered during his 24-day stay, and he did not have access to soap or a towel in his cell.  However, he admits he had access to regular showers and was provided a small amount of soap and a small towel at each shower time.  Plaintiff alleges he ran out of his one-roll-per-ten-days

---

[6] Officer Graham is not a named Defendant in this action.

allotment of toilet paper and was forced to wash himself with water and his hand after defecating on one occasion.  Although undeniably unsanitary, Plaintiff admits this circumstance occurred only once. *See* Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988) (finding no constitutional violation when an inmate stayed 28 days in a filthy, roach-infested cell without toilet paper for five days or soap, a toothbrush and toothpaste for ten days).  Finally, Plaintiff alleges the food was cold and served on greasy and uncovered trays with greasy utensils.  The Constitution requires that prisoners be provided "reasonably adequate food."   Jones v. Diamond, 636 F.2d 1364, 1378 (5th Cir. 1981).   "A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977).  While Plaintiff's allegations certainly suggest his food was unappetizing, they do not suggest it was unconstitutionally inadequate or unsafe.

Considering the nature of the totality of the conditions in AC and the duration of Plaintiff's exposure to those conditions (24 days), the conditions of Plaintiff's confinement in AC come nowhere close to being as restrictive and atypical as those at issue in Wilkinson.  Plaintiff's allegations do not reflect that he was subjected to conditions so severe that they imposed significant hardship in the context of prison life.  *See* Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship). The court therefore concludes that Plaintiff's allegations are not sufficient to show a liberty interest in remaining out of AC, and thus fail to state a plausible due process claim against Defendants Cloud and Jones.

E.      State Law Claims

Plaintiff's state law claims should be dismissed without prejudice.  It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over state claims against a defendant.  *See* Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997).  Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See also* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).  Where § 1367(c)

applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction.  Baggett, 117 F.3d at 1353 (citing Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994); Exec. Software N. Am. v. United States Dist. Court, 15 F.3d 1484, 1493 (9th Cir. 1994); New England Co. v. Bank of Gwinnett Cnty., 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); Fallin v. Mindis Metals, Inc., 865 F. Supp. 834, 841 (N.D. Ga. 1994)).  Taking these factors into account in this case, the undersigned concludes that because all of Plaintiff's federal claims are subject to dismissal, his state law claims should also be dismissed.[7]  The state court is best equipped to research and rule on matters of state law, and principles of comity suggest that it be allowed to do so.


IV.   CONCLUSION

    For the reasons set forth above, the court concludes that Plaintiff's federal claims should be dismissed with prejudice.  Plaintiff's state law claims should be dismissed without prejudice to his pursuing them in state court.

    Accordingly, it is respectfully **RECOMMENDED**:

    1.    That Plaintiff's federal claims be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

    2.    That Plaintiff's state law claims be **DISMISSED without prejudice** to Plaintiff's pursuing them in state court; and

    3.    That the clerk be directed to enter judgment accordingly and close the file.

---

[7] Dismissal of Plaintiff's state claims without prejudice should not result in unfairness to any party.  This case was filed only five (5) moths ago, and none of the Defendants have been served.  Also, the period of limitations has been tolled during the pendency of this action and will continue to be tolled for a period of at least thirty days after dismissal.  See 28 U.S.C. § 1367(d).  See also Krause v. Textron Fin. Corp., 59 So. 3d 1085  (Fla. 2011) (finding that § 1367(d) tolled Florida's statute of limitations applicable to constructive trust claim, and approving Scarfo v. Ginsberg, 817 So. 2d 919 (Fla. 4th DCA 2002) (concluding that dismissal of a federal claim for lack of subject matter jurisdiction did not bar application of § 1367(d) to toll state limitations period for claims re-filed in state court)); Blinn v. Fla. Dep't of Transp., 781 So. 2d 1103 (Fla. 1st DCA 2000) (§ 1367(d) applied to toll employee's claims initiated in federal court, then voluntarily dismissed before filing in state court).  Thus, following dismissal, Plaintiff should have more than adequate time to file his state claims in state court if he wishes.

At Pensacola, Florida this 25th day of February 2014.

/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**